UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERDate S.A., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ARKOSE LABS, INC.,<br><br>    Defendant. | Case No. 4:24-cv-02671-KAW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT; ORDER CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 27 |

On August 26, 2024, Defendant Arkose Labs, Inc. filed a motion to dismiss Plaintiffs Interdate S.A. and BE2 SARL's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS IN PART AND DENIES IN PART Defendant's motion to dismiss.

## I. BACKGROUND

In late 2021, Plaintiffs and Defendant "began preliminary discussions" regarding Plaintiffs' interest in purchasing Defendant's cyber security software and services. (First Am. Compl., "FAC," Dkt. No. 19 ¶ 18.) As part of those discussions, on December 1, 2021, Plaintiffs' representative, Pamela Cronin, emailed Defendant's "Enterprise Sales Director, Michael Seigal." (FAC ¶ 19.) Ms. Cronin asked if the "30 days opt out solution" in the contract "start[s] from the day [Plaintiffs] would complete integration and go live or from the date of signing the contract?" (FAC ¶ 19, Ex. 1 at 2.) In response, Mr. Seigal stated that

> The contract start date can be set at any point this year. We would look at how long it takes to integrate and then set the start date at the target for this to be live. The 30 days termination will kick in 30 days

after that start date. This should give us plenty of time to evaluate the solution and its efficacy.

(FAC ¶ 20, Ex. 1 at 2.)

On or before February 10, 2022, Defendant sent Plaintiffs "nearly identical" two-page contracts that contained "[t]he terms" Defendant was willing offer. (FAC ¶ 21; Order Forms, FAC, Exs. 2 & 3.) The Order Forms stated Plaintiffs would have an "Evaluation Period" during which they could "terminate" Defendant's services by providing written notice. (Compl., Ex. 2 at 2 & Ex. 3 at 2.) The Order Forms stated that "[t]he 'Evaluation Period'. . . will be the thirty (30) days period commencing on the Service Start Date." *Id*. The Order Forms defined the "Service Start Date" as March 31, 2022. (FAC, Ex. 2 at 1 & Ex. 3 at 1.)

The Order Forms state that if Plaintiffs did not terminate the contracts "during the Evaluation Period," they would remain "in effect for the Subscription Term . . . (subject to earlier termination as provided in the Agreement) and all applicable Fees . . ." in the Order Forms shall apply. (FAC, Ex. 2 at 2 & Ex. 3 at 2.[1]) They further required Plaintiffs to "pay all applicable annual and any other one-time Fees in advance of the Subscription Term []." *Id*. Neither of the Order Forms explicitly included an integration clause within the document. (FAC ¶ 23.)

The Order Forms were also governed by "the Arkose Labs Master Service Terms and Conditions," ("Master Service Agreement") which was "incorporated by reference" into the Order Forms. (FAC ¶ 24; Order Forms, FAC, Ex. 2 at 2 & Ex. 3 at 2.[2]) However, "[i]f any provision in" the Order Forms "conflicts with any provision of the [Master Service] Agreement," the Order Forms "shall govern and control." (Order Forms at 2.) The Master Service Agreement contained following integration clause:

> The Agreement is the entire agreement between Arkose Labs and Client regarding Client's use of Services and supersedes all prior and contemporaneous agreements, proposals or representations, written or oral, concerning its subject matter. The parties agree that any

---

[1] The "Subscription Term" is the "[t]he subscription duration for the Services" which "commence[d] upon the conclusion of the Evaluation Period and continue[d] for a period of two (2) years measured from the Service Start Date." *Id*. "Thereafter the Subscription Term" would "automatically renew for successive one year periods (each a 'Renewal Subscription Term') until either party notifie[d] the other of its intent not to renew at least thirty (30) days before the end of the then-current Subscription Term." *Id*.

[2] The Order Forms stated that the Master Service Agreement was available at https://arkoselabs.com/legal/msa. *Id*.

>term or condition stated in a Client purchase order or in any other Client order documentation (excluding Order Forms) is void. In the event of any conflict or inconsistency among the following documents, the order of precedence shall be: (1) the applicable Order Form, (2) this Agreement, and (3) the Documentation.

(FAC, Ex. 4 ¶ 14.)

After Plaintiffs received the Order Forms, on February 10, 2022, Ms. Cronin and Mr. Seigal exchanged additional emails. (FAC ¶¶ 26-27, Ex. 5.) Ms. Cronin stated Plaintiffs "had the final meeting with [their] product team and they are in agreement to test Arkose, which is great news." She "[h]oped to have the final sign off from management today and information from [Plaintiffs'] IT department as to when they could potentially start." *Id.* at Ex. 5 at 2. The "one concern" Ms. Cronin expressed was "about the timing of the trial period which in the new contract is 30 days." *Id.* She explained that Plaintiffs' "don't feel that is enough time for our devs to integrate, test and perform an evaluation." *Id.* She asked if Mr. Seigal could "discuss if this can be extended again?" *Id.*

Mr. Seigal responded that Defendant "[t]ypically" onboards new customers and provides them the tools they need (including "the development keys") so that they can "see the solution in action for 30 days." *Id.* Mr. Seigal explained that "[i]f the start date is 1st of March for example and we signed this week, you would be sent the dev keys at the time of signature as opposed to the date of the contract." *Id.*

Plaintiffs signed the Order Forms on April 27, 2022. (FAC ¶¶ 51-52.) The Order Forms required Plaintiffs to "pay all applicable annual and other one-time Fees in advance of the Subscription Term." (Order Forms at 1.) Plaintiffs did not pay Defendant any fees until "either May 10 or 11, 2022." (FAC ¶ 54.) On May 12, 2022, Defendant "sent an e-mail to Plaintiffs to set up a Slack channel for communications during the integration process." (FAC ¶ 55.) Defendant provided Plaintiffs with the development keys on May 24, 2022. (FAC ¶ 56.)

Plaintiffs allege that the integration of the services was completed on August 23, 2022, and their "ability to evaluate the services began on August 24, 2022." (FAC ¶¶ 57-59.) On September 21, 2022, Plaintiffs notified Defendant that they wanted to terminate the services, which was within the alleged 30-day termination period. (FAC ¶ 60.) Defendant refused to refund any funds paid. (FAC ¶ 61.)

3

On July 22, 2024, Plaintiffs filed the first amended complaint. (FAC, Dkt. No. 19.) On August 26, 2024, Defendant filed the motion to dismiss. (Def.'s Mot., Dkt. No. 27.) On September 9, 2024, Plaintiffs filed an opposition. (Pls.' Opp'n, Dkt. No. 30.) On September 23, 2024, Defendant filed a reply. (Def.'s Reply, Dkt. No. 33.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.   DISCUSSION

As an initial matter, the parties are advised that the Court will not consider Defendant's repeated arguments raising factual disputes, as they are inappropriate at the pleading stage, and, therefore, will not be addressed.

#### A.   Breach of Contract claim

Plaintiffs' first cause of action is for breach of contract. (FAC ¶¶ 64-121.) Defendant moves to dismiss this claim on the grounds that there was no guarantee of a viable termination period and that the Order Forms unambiguously stated that the "Evaluation Period" was limited to thirty days after the March 31, 2022 "Service Start Date." (Def.'s Mot. at 8.) Defendant further argues that the parol evidence rule bars the consideration of the emails between Ms. Cronin and Mr. Seigal in which they discussed the evaluation period. *Id.* at 9.

In opposition, Plaintiffs argue that extrinsic evidence is admissible under the parol evidence rule to explain ambiguous material terms and to determine whether a mutual mistake occurred. (Pls.' Opp'n at 6-7.) Plaintiffs' argument that the terms were ambiguous is unavailing, because the Order Forms clearly list the Service Start Date and dates of the Evaluation Period. (*See* Pls.' Opp'n at 7.) Plaintiffs' argument that extrinsic evidence is appropriate to show mutual mistake, however, is well taken. *Id.* at 6. California Code of Civil Procedure § 1856(e) provides that terms set forth in an integrated writing may be explained by evidence to correct a mutual mistake of an otherwise integrated agreement. *Pac. State Bank v. Greene*, 110 Cal. App. 4th 375, 388 (2003), as modified on denial of reh'g (Aug. 7, 2003). "Extrinsic evidence is necessary because the court must divine the true intentions of the contracting parties and determine whether the written agreement accurately represents those intentions." *Id.* at 388 (quoting *Hess v. Ford Motor Co.*, 27 Cal.4th 516, 525, (2002)) (internal quotations omitted).

Here, Plaintiffs allege that the Service Start Date listed on the Order Forms as March 31, 2022 was "incorrect" given that the Order Forms were not executed until April 27, 2022, which would be at the end of the stated 30-day evaluation period. (FAC ¶¶ 88, 98, 108-109.) In fact, Plaintiffs contend that integration was not complete until August 23, 2022, such that the evaluation and termination period began to run on August 24, 2022. (FAC ¶¶ 110-111.) The email communications addressed Plaintiffs' concerns about having sufficient time to integrate prior to the start of the evaluation period, and Defendant assured them that the evaluation period would not commence until after integration was complete. (*See* FAC, Ex. 5.) When this evidence is considered and taken as true for the purposes of this motion, the respective 30-day termination periods could be found to have ended on September 23, 2022. (FAC ¶ 113.) Thus, each of the plaintiffs timely terminated the services on September 21, 2022, and Defendant's failure to refund certain amounts paid by Plaintiffs constituted breach of contract. (FAC ¶¶ 114-121.)

In reply, Defendant argues that Plaintiffs do not clearly allege that a mutual mistake was made regarding the Service Start Date. (Def.'s Reply at 6-8.) While Plaintiffs characterize the Service Start Date as being "incorrect," there is no mention of "mistake," which is required to admit extrinsic evidence under California Code of Civil Procedure § 1856(e).

Accordingly, the Court dismisses the breach of contract claim with leave to amend to allege mistake.

### B. Breach of Quasi-contract claim

Plaintiffs' fourth cause of action is for breach of quasi-contract. (FAC ¶¶ 159-177.) Specifically, Plaintiffs plead that, in the event that the Court finds that there was not a valid contract, then a quasi-contract existed that included a termination period for Plaintiffs to test Defendant's services once they were integrated with their systems, and Defendant breached the quasi-contracts by not providing Plaintiffs with a termination period. (FAC ¶¶ 167-169, 175-177.)

Defendant moves to dismiss on the grounds that Plaintiffs admittedly entered into valid contracts governing their purchase of Defendant's software and services. (Def.'s Mot. at 19.) In opposition, Plaintiffs argue that they alleged a breach of a quasi-contract in the alternative, so they could potentially recover if the Court determines that there was not a valid contract between the

parties. (Pl.'s Opp'n at 17.)

At the pleading stage, a plaintiff "may alternately allege both a breach of contract claim and a quasi-contract claim—so long as [they] plead[] fact suggesting that the contract may be unenforceable or invalid." *Beluca Ventures LLC v. Aktiebolag*, 622 F. Supp. 3d 806, 812 (N.D. Cal. 2022). Federal Rule of Civil Procedure 8(d) expressly permits parties to raise alternative and even inconsistent claims. Fed. R. Civ. P. 8(d); *see Molsbergen v. United States*, 757 F.2d 1016, 1018–19 (9th Cir. 1985) ("[T]he Federal Rules of Civil Procedure ... explicitly authorize litigants to present alternative and inconsistent pleadings."). Even so, "a plaintiff may not plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid." *Jacobs v. Sustainability Partners LLC*, No. 20-cv-01981-PJH, 2020 WL 5593200, at *17 (N.D. Cal. Sept. 18, 2020) (citation omitted).

Here, Plaintiffs appear able to sufficiently plead facts suggesting that the contracts may be unenforceable due to the purportedly erroneous termination provision, alleged fraudulent inducement or for other reasons set forth in the operative complaint. *See* discussion, *infra,* Part III.C. Thus, the Court dismisses this claim with leave to amend this claim.

### C. Fraudulent Inducement Claim

Plaintiffs' second cause of action is for fraudulent inducement. (FAC ¶¶ 122-144.) "[F]raudulent inducement . . . has the same elements as fraud under California law." *Romero v. San Pedro Forklift, Inc.*, 266 Fed. App'x 552, 556 n. 2 (9th Cir. 2008) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631 (1996). Under California law, the elements of fraudulent inducement are: (1) a misrepresentation; (2) knowledge of the falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638, 909 P.2d 981 (1996).

First, Defendant moves to dismiss on the grounds that this claim conflicts with the breach of contract claim. (*See* Def.'s Mot. at 13 n.10.) Fraudulent misrepresentation is not a strict contract claim, but rather, has been characterized as also being a "tort of deceit." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638, 909 P.2d 981 (1996) (citing *Chelini v. Nieri*, 32 Cal. 2d 480, 487 (1948)

7

1 ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to
2 enter into a contract."). Thus, Plaintiff is permitted to plead this claim separately from the contract
3 claims.
4  Next, Defendant argues that the claim fails, because Mr. Seigal did not make any false
5 statements or misrepresentations. (Def.'s Mot. at 14.) Plaintiffs allege, however, that "Mr.
6 Seigal's purported statement that the termination period would begin after the integration was
7 complete was a misrepresentation." (FAC ¶ 127.) Indeed, in his February 10, 2022 email, Mr.
8 Seigal said that

> In terms of the 30 days – ideally this starts after you have already done the integration. Typically[,] once the contract is signed we give you the development keys straight away. If the start date is 1st of March[,] for example[,] and we signed this week, you would be sent the dev keys at the time of signature as opposed to the date of the contract. The keys allow you to do everything to integrate with Arkose labs, so in the above example, the typical integration would take a couple of weeks, so you would be ready for the contract start date to just run production traffic.

(FAC, Ex. 5.) The "typical" course did not come to pass, and Plaintiffs allege that Defendant knew that it intended to start the termination period before integration was complete despite Mr. Seigal's representations to the contrary, which were repeatedly conveyed over the course of three months. (FAC ¶¶ 127-133.)

 Defendant does not meaningfully move to dismiss this claim based on any of the other elements of the cause of action. Based on the allegations in the complaint, a reasonable jury could find that Plaintiffs were fraudulently induced to enter into a contract that retained the March 31, 2022 Service Start Date despite being executed almost one month later, so the motion is denied as to this cause of action.

### D. Promissory Estoppel claim

 The fifth cause of action is for promissory estoppel. (FAC ¶¶ 178-191.) Essentially, Plaintiffs allege that they relied on Mr. Siegel's promises, including that they would have a 30-day termination period that would not start until the software was integrated into their system, such that they paid for services that were never provided. *See ids.*

 Defendant again moves to dismiss on the grounds that this claim cannot be pled in the

8

1  alternative, because the alleged "promises" Plaintiffs contend support this claim are the same as
2  the alleged contract provisions Defendant purportedly breached. (Def.'s Mot. at 20-21.) The
3  Court agrees for the same reasons the quasi-contract claim must be amended; namely, Plaintiff
4  must plead facts suggesting that the contracts may be unenforceable or void. *See Beluca Ventures*
5  *LLC,* 622 F. Supp. 3d at 813.

6  Accordingly, this claim is dismissed with leave to amend.

### E. Breach of Implied Covenant of Good Faith and Fair Dealing claim

The sixth cause of action is for breach of implied covenant of good faith and fair dealing. (FAC ¶¶ 192-204.) Specifically, Plaintiffs allege that Defendant unfairly interfered with their rights to the benefits of the contract by failing to provide the development keys under the respective agreements until May 24, 2022, which was after the expiration of the termination period. (FAC ¶¶ 197-202.)

Defendant's arguments for dismissal are based on factual disputes regarding the merits of this claim—namely that Plaintiffs did not remit payment until May 10 or 11, 2022— rather than based on the pleadings. (*See* Def.'s Mot. at 22-23.)

Thus, the Court denies the motion to dismiss this claim.

### F. UCL Claim

Plaintiffs' third cause of action is for violation of California's Unfair Competition Law, Business and Professions Code § 17200. (FAC ¶¶ 145-158.) Specifically, Plaintiffs allege that Defendant engaged in unfair and fraudulent business practices based on Mr. Seigal's numerous assurances that the termination period would begin after integration was complete and the services went "live," which would provide sufficient time for Plaintiffs to evaluate the services during the termination period. (FAC ¶¶ 147-151.) Plaintiffs claims to have relied on these misrepresentations and entered into the contracts to their detriment. (FAC ¶¶ 152-158.)

Defendant moves to dismiss this claim on the grounds that it is derivative of the breach of contract and fraud claims, which it contends fails to state a claim because Mr. Seigal did not make any such "assurances." (Def.'s Mot. at 19.) Defendant raises no other basis for dismissal. *See id.*

The Court agrees that this claim alleging unfair and fraudulent business practices is

derivative, because it is premised on the same allegations set forth in the fraudulent misrepresentation and breach of implied covenant of good faith and fair dealing causes of action. *See Avila v. Bank of Am.*, No. 17-CV-00222-HSG, 2017 WL 4168534, at *5 (N.D. Cal. Sept. 20, 2017). That said, Court's findings that these claims are sufficiently pled under Rule 12(b)(6) requires that the motion be denied as to this cause of action. *See* discussions, *supra,* Parts III.C, E.

### G. Punitive Damages

Finally, Defendant moves to strike the prayer for punitive damages on the grounds that the Order Forms include a limitation of liability that precludes the recovery of punitive damages. (Def.'s Mot. at 23.)

In opposition, Plaintiffs argue that the alleged fraudulent misrepresentation permits the punitive damages prayer. (Pls.' Opp'n at 21.) Indeed, California "limit[s] the enforcement of exculpatory provisions [limiting liability] that purport to excuse a party from the party's own fraud or misconduct." *Diep v. Apple, Inc.*, No. 22-16514, 2024 WL 1299995, at *2 (9th Cir. Mar. 27, 2024) (citing Cal. Civ. Code § 1668).

Accordingly, Defendant's request to strike the prayer for punitive damages is denied.

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART. The motion is granted with leave to amend the first, fourth and fifth causes of action for breach of contract, breach of quasi-contract, and promissory estoppel. It is denied in all other respects.

Plaintiffs may file a second amended complaint within 21 days of this order. Plaintiffs are not permitted to add additional claims or parties without first obtaining leave of court.

Finally, the initial case management conference set for April 29, 2025 is continued to July 8, 2025 at 1:30 p.m. via videoconference. The joint case management statement is due on or before July 1, 2025.

IT IS SO ORDERED.

Dated: March 17, 2025

KANDIS A. WESTMORE
United States Magistrate Judge

10